## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| O. DOE; BRAZILIAN WORKER CENTER, INC.; LA COLABORATIVA, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; U.S. SOCIAL SECURITY ADMINISTRATION; MARCO RUBIO, in his official capacity as Secretary of State; MICHELLE KING, in her official capacity as Acting Commissioner of U.S. Social Security Administration, <br><br> Defendants. | Civil Action No.    25-10136 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      On January 20, 2025, within hours of his inauguration as President, Defendant Donald Trump issued an Executive Order purporting to overturn the longstanding protections of birthright citizenship (the "EO," attached hereto as Exhibit A). The EO declares that a person born in the United States whose mother is "unlawfully present" or whose presence is "lawful but temporary" and whose father is not a citizen or lawful permanent resident will no longer be granted birthright citizenship. It also directs federal agencies, including the Department of State and Social Security Administration, not to recognize such individuals as U.S. citizens via the issuance of passports, social security numbers, federal benefits, or otherwise.

2.      This unprecedented attempt to strip citizenship from millions of Americans with the stroke of a pen is flagrantly illegal. The President does not have the power to decide who becomes a citizen at birth. That right is conveyed by the first clause of the Fourteenth Amendment to the U.S. Constitution (the "Citizenship Clause"), which states that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States…." U.S. Const. amend. XIV.

3.      The Citizenship Clause's straightforward text and its history, affirmed by over a century of U.S. Supreme Court precedent, establish that it bestows citizenship upon *all persons* born in the United States—subject only to highly technical and rare exceptions such as the children of foreign diplomats. This constitutional grant of birthright citizenship, enshrined in the very fabric of our country, is also codified by federal statute and has been consistently followed and applied by the federal government since the ratification of the Fourteenth Amendment.

4.      It settled beyond all doubt that the President simply does not have the power to unilaterally revoke a person's birthright citizenship.

5.      These principals expose the EO for what it is: an unconstitutional abuse of power that punishes a group of U.S. citizens based only on their parents' immigration status.

6.      The group that the EO singles out, people born on U.S. soil to a mother who is "unlawfully present" or whose presence is "lawful but temporary" and a father who is not a citizen or lawful permanent resident ("targeted citizens"), are indisputably American citizens under the Citizenship Clause. Targeted citizens include the children of undocumented parents, immigrants whom the federal government has paroled into the country, and those holding various other immigration statuses. In declaring by fiat that all these people are not citizens and instructing

2

federal agencies not to treat, dignify, or honor them as such, the EO purports to divest the targeted citizens of citizenship and its privileges in the public consciousness and in practice.

7.    The harms flowing from de-Americanization are immense. As the U.S. Supreme Court has explained, depriving someone of their citizenship amounts to "the total destruction of the individual's status in organized society" and "is a form of punishment more primitive than torture." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). Those victimized in this way by the EO would be shorn of their national identity, stigmatized in the eyes of those who should be their fellow citizens, and forced to live with the shame, uncertainty, and fear that comes with potential banishment from their native country. Many would be rendered immediately stateless.

8.    The practical impact of the EO would be overwhelming and devastating. The Supreme Court has repeatedly observed that U.S. citizenship carries with it such "priceless benefits" that "it would be difficult to exaggerate its value and importance." *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). If the EO is allowed to go into effect, American citizens would be denied passports, leaving them unable to travel outside the country for fear of never being allowed re-entry; denied Social Security numbers and cards, hampering their ability to work without government permission; and prevented from exercising countless federal rights, protections, benefits, and entitlements that derive from U.S. citizenship.

9.    By purporting to unilaterally strip the targeted citizens of their right to citizenship, the EO violates the Fourteenth Amendment and corresponding statutory protections. And because the EO treats the targeted citizens as a subordinate caste of native-born Americans, entitled to fewer rights, benefits, and entitlements than other Americans due to their parents' alienage, it also violates their right to equal protection under the Due Process Clause of the Fifth Amendment.

10.    Plaintiff O. Doe is an expectant mother who is due in March 2025 and whose child, when born, will be one of the targeted citizens. Plaintiffs Brazilian Worker Center and La Colaborativa (together "Organizational Plaintiffs") are membership organizations that each have numerous members who are either currently pregnant or planning to grow their families in the future, and whose children will be among the targeted citizens. Plaintiffs bring this action for declaratory and injunctive relief preventing the Defendants from implementing the EO.

## JURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction over the claims stated herein under 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. § 2201.

12.    Venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff D. Doe resides in this District, Brazilian Worker Center and La Colaborativa are based in this District; and the District is a site of the injuries at issue.

## PARTIES

### Plaintiffs

13.    Plaintiff O. Doe is an expectant mother, whose baby is due in March 2025. She lives in Massachusetts and plans to be in the United States when her baby is born. She is lawfully in the country through Temporary Protected Status. The baby's father is not a U.S. citizen or a lawful permanent resident. She brings this action on behalf of herself and her unborn child.

14.    The Brazilian Worker Center ("BWC") is a non-profit corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business at 14 Harvard Avenue, Allston, MA 02134. It is a membership organization with a mission to empower immigrants and promote economic and social justice. It does so by, among other things, providing trainings on workplace rights, sharing information about the U.S. immigration system, and offering

community support services. Those services include assistance with rent support applications, school identification and registration, and communication with federal agencies. Among the organization's members are numerous people who are undocumented or in the United States on temporary statuses and who are either pregnant or plan to grow their families in the future. Those members will experience severe and immediate harm if the EO is allowed to take effect.

15.     La Colaborativa is a non-profit corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business at 318 Broadway, Chelsea, MA 02150. La Colaborativa is a membership organization with a mission to enhance the social, environmental, and economic health of the Chelsea community and its people. La Colaborativa represents a community largely composed on Latinx immigrants, including undocumented individuals and members of mixed-status families. For decades, the organization has championed the rights of immigrant families—both those with and without legal status—who are integral to sustaining urban economies like Chelsea's. Among the organization's members are numerous people who are undocumented or in the United States on temporary statuses and who are either pregnant or plan to grow their families in the future. These members will experience severe and immediate harm if the EO is allowed to take effect.

## Defendants

16.     Defendant Donald J. Trump is the President of the United States of America. As the head of the Executive Branch of the United States Government, Defendant Trump signed and issued the EO challenged by this action. He is sued in his official capacity only.

17.     Defendant U.S. Department of State ("DOS") is a department of the Executive Branch of the United States Government. DOS is responsible for, *inter alia*, reviewing passport

applications and issuing passports to United States citizens and will be responsible for implementing the dictates of the EO.

18.    Defendant Social Security Administration ("SSA") is an independent agency within the Executive Branch of the United States Government. SSA is responsible for, *inter alia*, assigning Social Security numbers and issuing Social Security cards to American citizens and will be responsible for implementing the dictates of the EO.

19.    Defendant Marco Rubio is the Secretary of DOS. In that role, Defendant Rubio is responsible for overseeing all DOS operations, including reviewing passport applications, making eligibility determinations thereon, and issuing passports to Americans with birthright citizenship. As head of DOS, Defendant Rubio is responsible for implementation of the dictates of the EO at DOS. Defendant Rubio is sued in his official capacity only.

20.    Defendant Michelle King is the Acting Commissioner of SSA. In that role, Defendant King is responsible for overseeing all SSA operations, including the assignment of Social Security numbers and the issuance of Social Security cards to American citizens. As head of SSA, Defendant King is responsible for implementation of the dictates of the EO at SSA. Defendant King is sued in her official capacity only.

## FACTS

### Historical and Legal Framework

#### *Citizenship Before the Fourteenth Amendment*

21.    Prior to the Fourteenth Amendment's ratification in 1868, the U.S. Constitution repeatedly used the term "citizen" without defining it.[1]

---

[1] *Slaughter-House Cases*, 83 U.S. 36, 72 (1872); *see* Bernadette Meyler, Note, *The Gestation of Birthright Citizenship, 1868-1898 States' Rights, the Law of Nations, and Mutual Consent*, 15 GEO. IMMIGR. L.J. 519, 526 (2001).

22.    Early American courts relied on English common law conventions to clarify the ambiguities this created and, in doing so, broadly embraced the common law idea of "jus soli," *i.e.*, that citizenship is acquired by birth within the sovereign's territory.[2]

23.    Supreme Court Justice Joseph Story discussed this concept in 1830, for example, writing that "[n]othing is better settled at the common law than the doctrine *that the children even of aliens born in a country*, while the parents are resident there under the protection of the government, and owing a temporary allegiance thereto, *are subjects by birth*." *Inglis v. Trs. of Sailor's Snug Harbor*, 28 U.S. 99, 164 (1830) (Story, J.) (emphasis added).

24.    Justice Story also outlined that there are few exceptions to the common law rule of citizenship by birth within the territory, which include the children of ambassadors and invading soldiers who are not "subject[s]" of the state when within the territory. *Id.* at 155-156.

25.    As the Supreme Court later detailed, this understanding of citizenship was "in force in all the English colonies upon this continent … down to the time of the Declaration of Independence … and continued to prevail under the constitution as originally established." *United States v. Wong Kim Ark*, 169 U.S. 649, 658 (1898).

26.    However, in its infamous decision in *Dred Scott v. Sandford*, 60 U.S. 393 (1857), the Supreme Court abandoned this idea of territorial birthright citizenship. The Court's explicitly racist opinion held that only those descended from people considered "citizens" by the framers were entitled to citizenship at birth, and that this excluded the descendants of slaves who had been "subjugated by the dominant race" and considered "subordinate." 60 U.S. at 404.

---

[2] *See United States v. Wong Kim Ark* 169 U.S. 649-664 (1898) (citing cases); Jonathan C. Drimmer, *The Newphews of Uncle Sam: The History, Evolution, and Application of Birthright Citizenship in the United States*, 9 GEO. IMMIGR. L.J. 667, 683-685 (1999) (citing cases); James C. Ho, *Defining "American": Birthright Citizenship and the Original Understanding of the 14th Amendment*, 9 GREEN BAG 2d 367, 369, 369 n.12 (2006) (citing cases).

27.    This decision helped spark the Civil War and was harshly criticized even contemporaneously. In an 1862 advisory letter to the Treasury Secretary, Attorney General Edward Bates forcefully disagreed with the *Dred Scott* decision, noting that "every person born in the country is, at the moment of birth, prima facie a citizen …."[3]

28.    Following the Union's victory over the Confederacy, Congress quickly acted to overturn the *Dred Scott* decision through a constitutional amendment.

### *The Fourteenth Amendment's Passage and Purpose*

29.    Congress passed the Fourteenth Amendment in 1866, and the states formally ratified it into the Constitution in 1868.

30.    One of Congress's primary goals in designing and enacting the Fourteenth Amendment, as demonstrated by both its plain text and its legislative history, "was the establishment of equality in the enjoyment of basic civil and political rights" among all Americans. *Shelley v. Kraemer*, 334 U.S. 1, 23 (1948).

31.    The first and fourth clauses of Section 1 of that Amendment, respectively known as the Citizenship Clause and the Equal Protection Clause, are the most relevant here. With those two clauses shown in bold, Section 1 reads, in full:

> "**All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside**. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; **nor deny to any person within its jurisdiction the equal protection of the laws**."

---

[3] Garrett Epps, *The Citizenship Clause: A "Legislative History*," 60 AM. U. L. REV. 331, 380 (2010) (quoting from Attorney General Bates' letter more extensively).

32.    The Supreme Court has repeatedly explained the purpose of the Equal Protection Clause. Congress designed it "to work nothing less than the abolition of all caste-based and invidious class-based legislation." *Plyler v. Doe*, 457 U.S. 202, 213 (1982).

33.    As scholars have pointed out, when used in reference to a country, the term "jurisdiction" is ordinarily defined as the country's lawmaking power.[4]

34.    And according to the common law convention in use before *Dred Scott*, everyone within the country was "subject" to the country's laws, with only narrow exceptions for people with recognized legal immunity like foreign diplomats and their families.

35.    Chief Justice John Marshall discussed this principle at length in 1812. He explained that "[t]he jurisdiction of the nation within its own territory is necessarily exclusive and absolute" except as applied to foreign "sovereign[s]", "ministers", and "troops" who have some degree of immunity from local laws. *The Schooner Exchange v. McFaddon*, 11 U.S. 116, 137-140 (1812).

36.    The plain meaning of the Citizenship Clause is thus that everyone born in the country, with narrow exceptions for the children of those immune to its laws, is a birthright citizen.

### *The Supreme Court Interprets the Citizenship Clause Broadly*

37.    In 1898, in *United States v. Wong Kim Ark*, the Supreme Court explicitly endorsed this expansive interpretation. 169 U.S. at 673-674.

38.    The Plaintiff in that case, Wong Kim Ark, was born in San Francisco to non-citizen parents from China who were living and working in the United States. In 1894, as an adult, he left the United States for a temporary visit to China. When he returned, Customs denied him entry into

---

[4] Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 Geo. L. J. 405, 437-440 (2020) (discussing 19th century definition of "jurisdiction"); Ho, *supra* note 2 at 368, n.8 (discussing modern definition and usage of "jurisdiction").

the country under the Chinese Exclusion Acts, which "prohibit[ed] persons of the Chinese race, and especially Chinese laborers, from coming into the United States…." *Id.* at 653.

39.    Wong filed an action in federal court arguing that his exclusion was illegal. As the parties agreed that the Chinese Exclusion Acts could not apply to Wong if he was a citizen, the case turned on whether he was a citizen by virtue of his birth in the United States. *Id*.

40.    When the case reached the Supreme Court, it held Wong to be a United States citizen. The Court started by tracing the long common law history of birthright citizenship, starting in England as early as the 1600s, which established that anyone born within the country was considered a "natural-born subject" unless the child of a diplomat or of an invading enemy.[5] The Court went on to determine that this same law applied during American colonial times and in the early days of the United States.[6] The Court then reviewed the *Dred Scott* decision and the adoption of the Fourteenth Amendment to overturn it.[7]

---

[5] *See Wong Kim Ark*, 169 U.S. at 675 ("It thus clearly appears that by the law of England for the last three centuries, beginning before the settlement of this country, and continuing to the present day, aliens, while residing in the dominions possessed by the crown of England, were within the allegiance, the obedience, the faith or loyalty, the protection, the power, and the jurisdiction of the English sovereign; and therefore every child born in England of alien parents was a natural-born subject, unless the child of an ambassador or other diplomatic agent of a foreign state, or of an alien enemy in hostile occupation of the place where the child was born.").

[6] *See id.* ("The same rule was in force in all the English colonies upon this continent down to the time of the Declaration of Independence, and in the United States afterwards, and continued to prevail under the constitution as originally established.").

[7] *See id.* (explaining that the Fourteenth Amendment "is declaratory in form, and enabling and extending in effect. Its main purpose doubtless was, as has been often recognized by this court, to establish the citizenship of free negroes, which had been denied in the opinion delivered by Chief Justice Taney in Scott v. Sandford (1857) 19 How. 393; and to put it beyond doubt that all blacks, as well as whites, born or naturalized within the jurisdiction of the United States, are citizens of the United States.").

41.    Emphasizing the Citizenship Clause's broad applicability, the Supreme Court found that it "includes the children born within the territory of the United States of all other persons, of whatever race or color, domiciled within the United States" and that "[e]very citizen or subject of another country, while domiciled here, is within the allegiance and the protection, and consequently subject to the jurisdiction, of the United States." *Id.* at 474.

42.    In a later case, *Afroyim v. Rusk*, the Supreme Court stated that the Citizenship Clause provides each citizen with "a constitutional right to remain a citizen in a free country unless [they] voluntarily relinquish[] that citizenship." 387 U.S. 253, 268 (1967).

43.    The Plaintiff in that case, a naturalized citizen, filed suit against the Secretary of State after his passport renewal application was denied under a federal law that said a citizen "shall lose" their citizenship if they vote in foreign election. *Id.* at 254 n.1.

44.    He argued that this law violated his Fifth Amendment Due Process rights as well as his right to be a citizen under the Citizenship Clause. The Court agreed, outlining the above right to citizenship and writing that "once acquired, this Fourteenth Amendment citizenship [is] not to be shifted, canceled, or diluted at the will of the Federal Government." *Id.* at 262.

### *The Citizenship Clause Is Codified And Consistently Followed By Federal Agencies*

45.    The Citizenship Clause's broad grant of birthright citizenship is also now a statutory right. In 1952, with *Wong Kim Ark* the settled law of the land, Congress passed the collection of immigration laws known as the Immigration and Nationality Act (INA).  Among the INA's provisions is 8 U.S.C. § 1401, which codifies the language of the Citizenship Clause. 8 U.S.C. § 1401 ("The following shall be nationals and citizens of the United States at birth: a) a person born in the United States, and subject to the jurisdiction thereof ….").

46.     Pursuant to their statutory and constitutional duties, federal agencies have consistently followed the broad conception of territorial birthright citizenship as directed by both this plain language and the Supreme Court's holding in *Wong Kim Ark*.

47.     For example, SSA has long accepted U.S. birth certificates as sufficient proof of U.S. citizenship for issuance of a Social Security number and card.[8]

48.     Through a formalized program known as Enumeration at Birth, the SSA works cooperatively with hospitals, which electronically send birth registration information to SSA.[9] SSA then assigns a Social Security number and issues a card.

49.     Similarly, other federal agencies like Defendant DOS have long considered state birth certificates to be proof of U.S. citizenship.[10]

## The Executive Order is Facially Illegal

50.     The EO is unlawful on its face. First, it purports to unilaterally deny citizenship rights to a swath of American citizens in violation of both the Citizenship Clause of the Fourteenth Amendment and 8 U.S.C. § 1401. Second, it explicitly targets certain citizens for disparate treatment in violation of the equal protection component of the Fifth Amendment. Third, it violates the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq*.

---

[8] *See* 20 C.F.R. § 422.107 (stating that an applicant for a social security card "may prove that he or she is a U.S. citizen by birth by submitting a birth certificate….")

[9] *See generally* SSA, STATE PROCESSING GUIDELINES FOR ENUMERATION AT BIRTH (2024), https://www.ssa.gov/dataexchange/documents/Updated%20State%20Processing%20Guidelines%20for%20EAB.pdf.

[10] *See* 22 C.F.R. § 51.42(a) (stating that "person born in the United States generally must submit a birth certificate" to sufficiently prove their citizenship on a passport application).

### *The EO Violates the Citizenship Clause and Its Statutory Counterpart*

51.    Birthright citizenship is a right defined and guaranteed by the Fourteenth Amendment. The President lacks the power to revoke it.

52.    Pursuant to the Supreme Court's broad interpretation of the Citizenship Clause in *Wong Kim Ark*, citizens targeted by the EO are *ipso facto* American citizens.

53.    Their citizenship rights are entitled to the respect and recognition of the federal government just as much as those rights belonging to the children of tenth-generation Americans. Indeed, in acting to overturn *Dred Scott*, Congress disavowed a construction of birthright citizenship that was in any way racial, hereditary, or dependent on the status of one's parents.

54.    The EO nevertheless instructs federal agencies not to recognize the citizenship of people born in the United States whose mother is "unlawfully present" or whose presence is "lawful but temporary" and whose father is not a citizen or lawful permanent resident.

55.    Not only will this result in federal agencies denying citizenship benefits to many thousands of American citizens, but it also veers the country dangerously back to the reprehensible conception of hereditary birthright citizenship espoused in *Dred Scott*.

56.    Because the EO violates the Citizenship Clause, it also violates the parallel statutory protections of 8 USC § 1401.

### *The EO Violates the Equal Protection Component of the Fifth Amendment*

57.    The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law …."

58.    The Supreme Court has determined that the Due Process Clause of the Fifth Amendment contains an "equal protection guarantee" that is "coextensive with that of the Fourteenth [Amendment] …." *U.S. v. Paradise*, 480 U.S. 149, 166 n.16 (1987).

59.    "The Equal Protection Clause was intended to work nothing less than the abolition of all caste-based and invidious class-based legislation." *Plyler*, 457 U.S. at 214.

60.    And yet that is precisely what the EO does. It resurrects the notion of a caste-based system, repudiated by our Nation following the Civil War, and singles the targeted citizens out for disparate treatment based on the alienage of their parents.

61.    In practice, it consigns the targeted citizens to a lower caste of native-born Americans who—although equal citizens according to the Fourteenth Amendment—are viewed and treated as something lesser by the federal government.

62.    The Executive Branch has declared through the EO that the targeted citizens, unlike other birthright citizens, are not real citizens under the law and will not be treated or respected as citizens. This inflicts public indignity and shame on the targeted citizens.

63.    Additionally, it ensures that the targeted citizens will receive fewer rights and benefits than those deemed "true" citizens by Defendants, including by, among other things, being automatically ineligible for passports, social security numbers, and certain government programs. Put simply, it imposes upon them a separate but unequal status.

64.    In these respects, the EO seeks to return to the world of *Dred Scott* in which it is acceptable for government action to subordinate one class of Americans to another. But the Fifth and Fourteenth Amendments outlaw such action.

### *The EO Violates the Administrative Procedure Act*

65.    The Administrative Procedure Act (APA) provides that a court shall "compel agency action unlawfully withheld" and "hold unlawful and set aside" agency action that is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706.

66.     The EO requires Defendant agencies to act in a manner that is in violation of the Fourteenth Amendment, the Fifth Amendment, and 8 U.S.C. § 1401 and therefore on its face violates the APA.

### The EO Will Cause the Plaintiffs Profound Injury

67.     American citizenship carries with it priceless privileges that are unavailable to noncitizens. Those include, among countless others, the right to vote in federal elections, the right to run for and be appointed to certain high elective offices, and the right to serve on federal and state juries.[11]

68.     Citizenship also provides an individual with "membership in a nation," *Minor v. Happerset*, 88 U.S. 162, 166 (1874), thereby admitting them into a community and promoting social cohesion and integration.

69.     If the government takes away or refuses to recognize a person's American citizenship, it strips them of these rights and privileges that are exclusive to citizens, as well as their identity as part of a greater community.

70.     It also makes the person, unlike someone with recognized citizenship status, subject at any time to the possibility of banishment in the form of deportation.

71.     Due to the extreme consequences of stripping someone of their citizenship, the Supreme Court has held that it would be cruel and unusual in violation of the Eighth Amendment to impose such a sanction as a criminal penalty. *Trop*, 356 U.S. at 101.

72.     Punishing someone in this way is unacceptable because it "subjects the individual to a fate of ever-increasing fear and distress. He knows not … what proscriptions may be directed

---

[11] *See* Vinineath Nuon Gopal, *From Judicial to Administrative Denaturalization: For Better or For Worse?*, 72 U. Colo. L. Rev. 779, 780 (2001) (listing these and other benefits available to citizens of the United. States, but not noncitizens).

15

against him, and when and for what cause his existence in his native land may be terminated. He may be subject to banishment, a fate universally decried by civilized people." *Id.* at 102.

73.    As Justice Warren explained in his dissent in *Perez v. Brownell*—later overturned by *Afroyim*—"[c]itizenship is man's basic right for it is nothing less than the right to have rights. Remove this priceless possession and there remains a stateless person, *disgraced* and *degraded* in the eyes of his countrymen." 356 U.S. 44, 64 (1958) (Warren, J., dissenting) (emphasis added).

74.    The EO, therefore, inflicts irreparable and undeniable injury upon the targeted citizens and on the Organizational Plaintiffs and their members.

75.    By its terms, it declares that the targeted citizens are not citizens in the eyes of the federal government and instructs federal agencies to treat them accordingly. This denies them their rightful status as American citizens in both form and substance.

76.    In announcing publicly and wrongfully that the targeted citizens are not citizens—and imposing upon them a governmentally sanctioned lesser status than other rightful citizens—the EO stigmatizes them, injures their reputations, and impugns their dignity.

77.    It also wrenches from them membership in the larger citizenship community and, with it, a sense of identity, social acceptance, and pride.

78.    Without recognized citizenship status from federal agencies, including those that enforce immigration laws, the targeted citizens will have to live with constant fear, anxiety, and uncertainty that accompanies marginalization and the risk of deportation. At any moment, their government may choose to exile them from their country of birth.

79.    The idea of losing one's citizenship—de-Americanization—is so noxious to our nation that it is considered cruel and unusual to enforce it as punishment for a crime. And yet the EO purports to impose that very sanction on a broad range of innocent American citizens.

16

80.     The psychological harm from all of this is, and will continue to be, traumatizing and destabilizing for the targeted citizens.

81.     The loss of citizenship the EO inflicts on the targeted citizens also carries with it a loss of value that is unconscionable and immeasurable in its scope and scale.

82.     If federal agencies uniformly refuse to recognize their citizenship status as the EO directs, including Defendant federal agencies, they will in practice lose access to the exclusive rights and benefits that come with citizenship status, which the Supreme Court has described as "priceless." *Schneiderman*, 320 U.S. at 122.

83.     Not only will the targeted citizens lose access to crucial documents like passports and social security cards—which would serve to identify them as citizens and provide countless other everyday benefits—but also, they will become ineligible for numerous federal benefits programs that require applicants to have citizenship or other qualifying immigration status.

84.     The federal government's declaration that the targeted citizens are not citizens will have a significant chilling effect on their exercise of citizenship rights and access to citizenship benefits. Targeted citizens will inevitably avoid things like voting and applying for benefits for fear of persecution and prosecution.

## CLAIMS FOR RELIEF

## COUNT I

### Fourteenth Amendment to the U.S. Constitution—Citizenship Clause

85.     Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

17

86.     The Citizenship Clause of the Fourteenth Amendment to the U.S. Constitution states that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States…."

87.     The Supreme Court has held that "the protection afforded to the citizen by the Citizenship Clause … is a limitation on the powers of the National Government as well as the States." *Saenz v. Roe*, 526 U.S. 489, 507-508 (1999).

88.     Plaintiff O. Doe and similarly-situated members of the Organizational Plaintiffs who are pregnant or will grow their families in the future will have children who are United States citizens under the Fourteenth Amendment—born in the United States and, at the time of their birth, subject to its laws.

89.     Yet the EO declares that these people will not be citizens and instructs federal agencies like Defendants DOS and SSA to refuse to recognize them as such, including by denying them passports and Social Security numbers and cards, stripping them of their U.S. citizenship on paper, in the public consciousness, and in practice, and depriving them of the bundle of rights and benefits attendant to that citizenship, including access to passports and social security numbers.

90.     Defendants' conduct causes Plaintiffs direct and proximate harm as described herein.

## COUNT II

### Fifth Amendment to the U.S. Constitution—Equal Protection

91.     Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

92.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law …."

93.    The Supreme Court has determined that the Due Process Clause of the Fifth Amendment contains an "equal protection guarantee" that is "coextensive with that of the Fourteenth [Amendment] …" *U.S. v. Paradise*, 480 U.S. 149, 166 n.16 (1987).

94.    The EO intentionally and invidiously singles out the targeted citizens for disparate treatment relative to similarly situated U.S. citizens on the sole basis of the alienage of the targeted citizens' parents.

95.    Specifically, the EO purports to deny the targeted citizens their rightful status as U.S. citizens and instructs federal agencies, such as Defendants DOS and SSA, not to recognize that citizenship, including through the issuance of passports and social security numbers and cards.

96.    The EO only directs this treatment at U.S. citizens born in the United States whose mother is "unlawfully present" or whose presence is "lawful but temporary" and whose father is not a citizen or lawful permanent resident. It does not purport to change the status of, or otherwise impact, U.S. citizens born in the United States to citizens or LPRs.

97.    The disparate treatment the EO inflicts on the targeted citizens causes Plaintiffs direct and proximate harm as described herein.

## COUNT III

### 8 U.S.C. § 1401—Statutory Protection of Birthright Citizenship

98.    Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

99.    8 U.S.C. § 1401 provides that "The following shall be nationals and citizens of the United States at birth: a) a person born in the United States, and subject to the jurisdiction thereof …."

100.    By purporting to deny citizenship to targeted citizens, the EO violates this command and concomitant statutory protections.

101.    It causes the Plaintiffs direct and proximate harm as described herein.

## <u>COUNT IV</u>

**5 U.S.C. § 551, et seq.—Administrative Procedure Act**

**(Against all Defendants except Defendant Trump)**

102.    Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

103.    The Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq., ensures that federal agencies are accountable to the public by providing a "right of review" to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  Judicial review extends to "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

104.    Among other things, the APA empowers the federal courts to "compel agency action unlawfully withheld" and "hold unlawful and set aside agency actions, finding, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1), (2)(A).

105.    The Administration's actions, as described above constitute arbitrary and capricious acts contrary to the U.S. Constitution and federal law through denying the privileges of citizenship to U.S. citizens as described above.

## COUNT V

### 28 U.S.C. §§ 2201, 2202—Declaratory Judgment

106.    Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein

107.    For the reasons stated above, Defendants have violated the rights of Plaintiffs under the Citizenship Clause of the Fourteenth Amendment and the equal protection guarantee of the Due Process Clause of the Fifth Amendment. Defendants have also, as pleaded above, committed violations of 8 U.S.C. § 1401 and the APA.

108.    Plaintiffs seek a declaration to that effect.

109.    Defendants' illegal actions have injured, and will continue to injure, Plaintiffs in numerous ways as described herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request the following relief:

A.      A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the Executive Order is: unconstitutional because it violates the Fourteenth Amendment's Citizenship Clause and the Fifth Amendment's Equal Protection guarantee; and illegal because it violates the provisions of 8 U.S.C. § 1401, and the Administrative Procedure Act;

B.      A preliminary and permanent injunction enjoining Defendants, their officials, agents, employees, assigns, and all persons acting in concert or participating with them from enforcing the Executive Order or carrying out its directive;

C.      An order awarding Plaintiffs attorneys' fees, costs, and expenses; and

D.      Such other and additional relief as the Court deems equitable, just, and proper.

Dated:  January 20, 2025                              Respectfully submitted,

                                                      */s/  Oren Sellstrom*
                                                      Oren Sellstrom (BBO #569045)
                                                      Iván Espinoza-Madrigal (BBO # 708080)
                                                      Jacob Love (BBO #699613)

                                                      Mirian Albert (BBO #710093)

                                                      Lawyers for Civil Rights
                                                      61 Batterymarch Street, 5th Floor
                                                      Boston, MA 02110
                                                      (617) 482-1145
                                                      osellstrom@lawyersforcivilrights.org
                                                      iespinoza@lawyersforcivilrights.org
                                                      jlove@lawyersforcivilrights.org
                                                      malbert@lawyersforcivilrights.org
                                                      Attorneys for Plaintiffs

# EXHIBIT A

Menu                                                                                    Search



PRESIDENTIAL ACTIONS

# PROTECTING THE MEANING AND VALUE OF AMERICAN CITIZENSHIP

EXECUTIVE ORDER

January 20, 2025

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

Section 1.  Purpose.  The privilege of United States citizenship is a priceless and profound gift.  The Fourteenth Amendment states:  "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."  That provision rightly repudiated the Supreme Court of the United States's shameful decision in *Dred Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857), which

misinterpreted the Constitution as permanently excluding people of African descent from eligibility for United States citizenship solely based on their race. But the Fourteenth Amendment has never been interpreted to extend citizenship universally to everyone born within the United States.  The Fourteenth Amendment has always excluded from birthright citizenship persons who were born in the United States but not "subject to the jurisdiction thereof."  Consistent with this understanding, the Congress has further specified through legislation that "a person born in the United States, and subject to the jurisdiction thereof" is a national and citizen of the United States at birth, 8 U.S.C. 1401, generally mirroring the Fourteenth Amendment's text. Among the categories of individuals born in the United States and not subject to the jurisdiction thereof, the privilege of United States citizenship does not automatically extend to persons born in the United States:  (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Sec. 2.  Policy.  (a)  It is the policy of the United States that no department or agency of the United States government shall issue documents recognizing United States citizenship, or accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship, to persons:  (1) when that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States was lawful but temporary, and the

person's father was not a United States citizen or lawful permanent resident at the time of said person's birth.

(b)  Subsection (a) of this section shall apply only to persons who are born within the United States after 30 days from the date of this order.

(c)  Nothing in this order shall be construed to affect the entitlement of other individuals, including children of lawful permanent residents, to obtain documentation of their United States citizenship.

Sec. 3.  Enforcement.  (a)  The Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security shall take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, in any manner inconsistent with this order.

(b)  The heads of all executive departments and agencies shall issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities.

Sec. 4.  Definitions.  As used in this order:

(a)  "Mother" means the immediate female biological progenitor.

(b)  "Father" means the immediate male biological progenitor.

Sec. 5.  General Provisions.  (a)  Nothing in this order shall be construed to impair or otherwise affect:

(i)  the authority granted by law to an executive department or agency, or the head thereof; or

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)  This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)  This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against

UNLEASHING THE AMERICAN AND VALUE OF AMERICAN CITIZENSHIP – The White House

the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,

   January 20, 2025.

News

Administration

Issues

**THE WHITE HOUSE**

1600 Pennsylvania Ave NW
Washington, DC 20500

THE WHITE HOUSE

WH.GOV

Copyright